WILLIAM H. APPLETON & others *vs.* FREDERICK PARKER & others.

The acceptance of a negotiable promissory note for a pre-existing debt is only presumptive evidence of payment, and does not necessarily discharge sureties for the original debt.

A creditor who takes a negotiable promissory note, payable at a future time, cannot sue upon his original debt before the note becomes due.

Taking a negotiable promissory note, payable in terms at the same time as, and, adding the days of grace, three days later than, the time stipulated in a bond with sureties for the payment of the debt, discharges the sureties.

ACTION OF CONTRACT upon a bond executed by Frederick Parker as principal, and the other defendants as sureties, dated the 1st of April 1854, and conditioned that he should " pay or cause to be paid unto the said D. Appleton & Co., or their legal representatives, all claims for ' Benton's Thirty Years in the United States Senate,' sold or delivered unto the abovenamed Frederick Parker, within three months from the date of each invoice or delivery." Writ dated November 22d 1856. After the commencement of the suit, Frederick Parker, the principal, died insolvent, and the plaintiffs discontinued the suit against him. The case was submitted to the decision of the court upon an agreed statement of facts, the material parts of which were as follows :

The plaintiffs, booksellers in New York, and publishers of a book entitled " Benton's Thirty Years in the United States Senate," delivered several copies of this book to Frederick Parker, a bookseller in Boston ; and the bond in suit was given to secure the payment for these. On the 18th of June 1856 Parker sent by letter to the plaintiffs four promissory notes signed by him, " for the balance due from " him upon the second volume of this book, bearing different previous dates, and each payable in three months from date. The plaintiffs, upon the 19th of June, acknowledged the receipt of his letter, " enclosing notes in full for Benton account." Three of these notes were paid at maturity. The last, which was dated June 14th, for $909, and which was not paid, was given for two invoices of books delivered upon

the 13th and the 16th of June, the price of which the plaintiffs now sought to recover.  The defences relied upon by the sureties were, payment by Frederick Parker, and an extension by the plaintiffs of the time of payment beyond three months, by which the sureties were discharged.

*T. K. Lothrop*, for the plaintiffs, cited *Thacher* v. *Dinsmore*, 5 Mass. 299 ; *Maneely* v. *M' Gee*, 6 Mass. 143 ; *Melledge* v. *Boston Iron Co.* 5 Cush. 170 ; *Butts* v. *Dean*, 2 Met. 76 ; *Davis* v. *Universalist Meeting-house in Lowell*, 8 Met. 321 ; *Curtis* v. *Hubbard*, 9 Met. 328 ; *Morse* v. *Reed*, 13 Met. 62 ; *Tuckerman* v. *Sleeper*, 9 Cush. 177 ; *Thurston* v. *Blanchard*, 22 Pick. 8 ; *Vancleef* v. *Therasson*, 3 Pick. 12 ; *Van Ostrand* v. *Reed*, 1 Wend. 424 ; *Tobey* v. *Barber*, 5 Johns. 68 ; *Hughes* v. *Wheeler*, 8 Cow. 77 ; *Page* v. *Hubbard*, Sprague, 335 ; *Owen* v. *Homan*, 4 H. L. Cas. 997 ; *Smith* v. *Dann*, 6 Hill, 543 ; *Lincoln* v. *Bassett*, 23 Pick. 154 ; *Sigourney* v. *Wetherell*, 6 Met. 564 ; *Twopenny* v. *Young*, 3 B. & C. 208 ; *Emes* v. *Widdowson*, 4 Car. & P. 151 ; *Bell* v. *Banks*, 3 Man. & Gr. 258 ; *Pring* v. *Clarkson*, 1 B. & C. 14 ; *United States* v. *Hodge*, 6 How. 279 ; *Weakly* v. *Bell*, 9 Watts, 280, 283 ; *Gahn* v. *Niemcewicz*, 11 Wend. 318, 324 ; *Elwood* v. *Deifendorf*, 5 Barb. 409 ; Byles on Bills, 196 ; Chit. Bills, (10th ed.) 409 ; *Wyke* v. *Rogers*, 1 De Gex, Macn. & Gord. 408 ; *Melvill* v. *Glendining*, 7 Taunt. 126 ; *M'Lemore* v. *Powell*, 12 Wheat. 554 ; *Creath* v. *Sims*, 5 How. 192.

*T. Wentworth*, for the defendants.

DEWEY, J.  The acceptance of a negotiable promissory note of Frederick Parker for the amount of the indebtedness guarantied by the sureties on this bond would not necessarily operate to discharge the sureties upon the ground of payment thereby and extinguishment of the original indebtedness to the plaintiff. It is well settled that the giving of such note is only presumptive evidence of payment ; and whenever it may properly be inferred that the parties did not so intend, the court will carry out the purpose of the parties.  The holding of collateral security for the original debt has been deemed a strong circumstance for inferring that the parties did not intend, by the taking of the individual note of the debtor, to extinguish the original debt

thus secured. In *Butts* v. *Dean*, 2 Met. 76, taking a nego-
tiable note was held not to be an extinguishment of a debt cov-
ered by a bond guarantying the payment of such debt. In
*Curtis* v. *Hubbard*, 9 Met. 328, the same doctrine was applied
where the creditor held a written guaranty, not under seal, of a
third party for the payment of the debt. The principles recog-
nized in these cases furnish a full answer to any objection taken
to the plaintiffs' recovery on the mere ground of their accepting
a negotiable note of the principal debtor for a like amount as
the debt.

The further question is, whether this liability was not dis-
charged by the plaintiffs' voluntarily extending the term of credit
for the merchandise sold beyond the period stipulated in the
bond, viz., "within three months from the date of each invoice or
delivery." For the invoices or bills of merchandise, delivered
on the 13th and the 16th of June 1856, a promissory note was
given, embracing both items, for the sum of $909, bearing
date June 14th, and payable by its terms in three months from
its date ; but computing the time by the legal effect of such
a promise, it would be legally due and payable on the 17th
of September. The position assumed is, that as to the bill of
merchandise of June 13th, there was an extension of credit of
four days beyond the time stipulated in the bond, and as to the
bill of merchandise of June 16th, of one day. As to the first
bill, the question does not arise of the effect of an extension
solely attributable to the allowance of three days of grace, inas-
much as there was an extension of time to the extent of one day
beside the three days of grace. As to this bill, the only question
therefore is whether the plaintiffs, by taking a note payable after
the three months, extended the credit to the debtor, Frederick
Parker, so as to discharge his sureties on this bond. As to the
other bill, the further question arises, whether the days of grace
to which a note is entitled are to be considered as an extension
of the time of credit, and may be so treated in reference to a
surety of the debtor.

As to these questions, the first point of inquiry would seem to
be whether the taking of the note, payable at a more extended

period, was absolute in its effect in disabling the plaintiffs to enforce a claim on Frederick Parker at any earlier period than the time fixed by the note. This, we suppose, must be the effect of it, though it does not prevent the plaintiffs' suing in an action of contract for the goods after the note is payable. The parties have by the note declared the term of credit, and the plaintiffs are so far bound by it.

It is stated in Chitty on Bills, 172, that a person by taking a bill of exchange or promissory note in satisfaction of a former debt, or of a debt created at the time, is precluded from afterwards waiving it, and suing the person who gave it to him for the original debt before the bill is due; for the taking of the bill amounts to an agreement to give the person delivering it credit for the length of time it has to run. In *Stedman* v. *Gooch*, 1 Esp. R. 3, Lord Kenyon says that in such case " the law is clear that the creditor cannot legally commence an action on his original debt until such bill or note becomes payable, or default is made in the payment." In *Tobey* v. *Barber*, 5 Johns. 68, it was said by the court, that " taking a note only postpones the time of payment of the old debt until a default be made in the payment of the note; " and again, in *Putnam* v. *Lewis*, 8 Johns. 389, it was said : " Giving the note " for a book debt " was no payment. It could only suspend the right of action during the period allowed for payment of the note." The same principle was stated in the earlier case of *Herring* v. *Sanger*, 3 Johns. Cas. 71. Assuming such to be the law, the plaintiffs, as to the bill of merchandise of 13th June, clearly gave more than three months' credit to Frederick Parker; and so the contract was not within the terms of the bond, and the sureties are not liable therefor.

As to the bill of merchandise of June 16th, the question whether there was an extension or not depends wholly upon the effect to be given to an extension, beyond the day named in the note for payment, of the further time of three days, usually called the days of grace. However this extension of three days may have grown up, it has, either by the law merchant, or by statute, become a fixed and positive rule of law, and as much fixed upon the contract as though it were written on its face.

JANUARY 1860.                         177

Appleton & others v. Parker & others.

The maker is not in dishonor, and cannot be sued for a breach of his contract, until the expiration of the days of grace; and a surety is as much affected by the receipt of such note by the creditor as he would have been if no such note had been given, but the original sale had been on a book credit of three months and three days.

The only possible answer to the defence thus urged on behalf of the surety is, that a stipulation of guaranty that the principal shall pay for merchandise in three months from the date of each invoice or delivery, by usage of merchants, means a three months' credit, with days of grace superadded thereto. We have no evidence of any usage to this effect; nor is it clear that, if it were shown to exist as between the parties vendor and vendee, it would affect a surety. In reference to such party the contract is to be construed strictly. In *Holl* v. *Hadley*, 5 Bing. 54, where the guaranty was for payment of goods to be sold on a credit of two months, and the vendor had taken a negotiable note therefor, computing not from the day of each invoice or delivery, but taking the entire monthly dues at the end of the month, it was held that the custom of trade could not be relied upon to show that this was not an extension, and thereby to charge the surety.

The only case to which we were referred as giving a sanction to the contrary doctrine, and holding the surety liable, in disregard of the extension of the three days of grace, is that of *Smith* v. *Dann*, 6 Hill, 543.

This precise question is apparently a novel one; but, as it seems to us, we shall more fully carry out the well settled principles applicable to the liability of a surety, by holding that lending extension of the time of credit stipulated in the guaranty, in favor of the principal debtor, whenever it arises from any new form of obligation entered into between the original parties, must discharge the surety. A single day may be as fatal in its consequences to the surety as a month. Suppose the case to be, that the notes of the principal became due and payable on the day the principal had failed, or become publicly insolvent; having on the previous day paid all notes then due and payable,

VOL. XV.                    12

it is quite apparent that such extension might materially affect a surety, if he is to be holden for a single day longer than he stipulated.

The result is therefore, as to both the invoices, that the sureties are discharged by the extension of the time of credit to the principal beyond that stipulated for in the bond.

*Judgment for the defendants.*